FILED IN DISTRICT COURT
OKLAHOMA COUNTY
APR 12 2021
RICK WARREN
COURT CLERK
34
2021 APR 22 PM2:04
OKLAHOMA CITY CLERK

IN THE DISTRICT COURT OF OKLAHOMA COUNTY
STATE OF OKLAHOMA

RICHARD ANTHONY,

Plaintiff,

vs.

(1) CITY OF OKLAHOMA CITY, a political subdivision of the State of Oklahoma;
(2) CALEB GOTTSCHALK, individually and In his official capacity as a police officer for Oklahoma City Police Department;
(3) SIGNAL 88, LLC;
(4) RANDY RIGSBY; and

Defendant.

Case No. CJ-2021-1582

MUNICIPAL COUNSELOR'S
APR 22 2021 PM3:04

## PETITION

**COMES NOW**, Plaintiff, Richard Anthony, and for his cause of action against the Defendants City of Oklahoma City, Caleb Gottschalk, Signal 88 LLC, and Randy Rigsby, and alleges as follows:

## INTRODUCTION

1. As described herein, Richard Anthony (hereinafter "Plaintiff" or "Anthony") was simply trying to gain access to his own home, which Randy Rigsby (hereinafter "Rigsby") a security guard for Signal 88, LLC (hereinafter "Signal 88") knew, when he needlessly reported a home invasion in action. The City of Oklahoma City, (hereinafter "OKC") arrived at the apartment complex, parking their vehicles several feet from the alleged "scene" without their lights or sirens activated. In the dark, Caleb Gottschalk (hereinafter "Gottschalk") failed to identify himself, and





demanded that Plaintiff take his hand out his pocket. When Plaintiff failed to do so Gottschalk pepper sprayed Plaintiff in the face, and more particularly his eyes.

2. Plaintiff was then handcuffed. Gottschalk yelled at Plaintiff "don't come at me," even though he was making no gestures towards Gottschalk who then kicked Plaintiff's feet out from under him and smashed his head into a wall. Bleeding and blinded Plaintiff was taken to hospital and diagnosed with a severe concussion.

3. Upon discharge from hospital he was taken to the Oklahoma County Jail and placed in a cell, despite his medical record stating that he should be discharged home with instructions to wake the patient every two hours to check for appropriate mentation.

## JURISDICTION AND VENUE

4. This action is brought pursuant to 42 U.S.C §1983 and the Fourth and Fourteenth Amendments of the United States Constitution, as well as the laws of the State of Oklahoma, including but not limited to the Oklahoma Governmental Tort Claims Act, 51 O.S. § 153, et seq.

5. The Court has federal question jurisdiction of this action pursuant to 28 U.S.C. § 1331; venue is proper pursuant to 28 U.S.C. § 1391.

6. The amount in controversy exceeds $75,000, exclusive of costs and interest.

7. Plaintiff, Richard Anthony, also asserts causes of action arising under Oklahoma law, namely claims for negligence, assault, battery, wrongful arrest, and intentional infliction of emotional distress. This Court has supplemental jurisdiction over these claims pursuant to 28 U.S.C. § 1367.

8. Anthony is now, and was at all times material hereto, a resident of Oklahoma County, Oklahoma.

9. Defendant OKC is a municipality and a political subdivision of the State of Oklahoma.

10. Defendant Gottschalk was at all material times, a sworn police officer employed by and working for Defendant OKC. Defendant Gottschalk engaged in conduct complained of under color of law, in the scope of his employment as a law enforcement officer, and a representative of OKC. Defendant Gottschalk is sued in his individual and official capacity as a law enforcement officer for OKC.

11. Defendant Signal 88 is a private foreign for-profit corporation registered to do business in the State of Oklahoma. Signal 88 was at the time, contracted by the apartment complex where this incident took place, charged with the duty of protecting the residents of the complex.

12. Defendant Rigsby was employed or contracted by Signal 88 to provide onsite security for Park on Memorial Apartments in Oklahoma County, where the incident took place.

13. Defendants' conduct was within the exercise of State authority within the meaning of 42 U.S.C. § 1983.

14. Defendants OKC and Gottschalk deliberately failed to take remedial action in the face of actual and/or constructive knowledge of constitutional violations and claims arising under Oklahoma state law.

15. Pursuant to Oklahoma Government Tort Claims Act, Anthony submitted Notice of Government Tort Claim on July 20th, 2020, which was received on July 22nd, 2020 by OKC. This lawsuit has been timely commenced pursuant to the Oklahoma Governmental Tort Claims Act. 51 O.S. § 151, et seq.

16. The acts and/or omissions giving rise to Anthony's claims arose in Oklahoma County, Oklahoma, which is within the jurisdiction boundaries of the United States District Court for the Western District of Oklahoma.

## FACTUAL BACKGROUND

17. Anthony adopts and realleges all material allegations in paragraphs 1 through 16 as if set forth below.

18. Richard Anthony has lived in Oklahoma his whole life, and at the time when this case arose on August 2nd, 2019, he resided at Park on Memorial Apartments.

19. On this evening, Anthony had been to dinner with his partner, and was taken home to his apartments.

20. When he arrived at his apartment complex, Anthony realized that he did not have a key to his apartment.

21. He contacted the apartment's onsite security guard, Rigsby, for Signal 88, and asked that he open the door to his apartment. The security guard refused to allow Anthony access to his own home.

22. Anthony made a passing comment that he could break his door down, but took no action.

23. Rigsby then called the police, and stated to them that someone was trying to break into the apartments.

24. Defendant OKC arrived on scene. OKC did not initiate their emergency lights nor sirens, and actually parked their vehicles some distance from where the alleged break-in was supposed to be occurring.

25. It is clear from the body camera footage, as worn by the officers that the area is not well lit. The officers had flash lights which they pointed directly on Anthony.

26. On the video Anthony is clearly standing still, talking on the telephone, with his left hand in his pocket.

27. Defendant Gottschalk exited his vehicle and walked some distance before he came into contact with Anthony.

28. Gottschalk immediately stated:

> "What are you doing? Take your hand out of your pocket. Take your hand out of your pocket. Take your hand out of your pocket. I said take your hand out of your pocket."

29. When Plaintiff failed to respond in the few seconds he was allowed by Gottschalk, he was then peppered sprayed in the face which rendered Anthony bent over and blinded.

30. At no time during this exchange did Gottschalk identify himself, as he approached Plaintiff in the dark and commanded Anthony to remove his hand from his pocket. Gottschalk never told Plaintiff that he was a police officer, nor that he was responding to a call regarding a disturbance or home invasion.

31. Anthony did not raise his voice at all during the whole exchange.

32. As soon as Anthony was sprayed in the face, Gottschalk grabbed ahold of Anthony and said "put your hands behind your back" and handcuffed him. He did this by yanking Plaintiff's arms behind his back.

33. Anthony said "I haven't done, shit" over and over, and he was told by another officer "do what he says and stop talking."

34. Anthony continued to protest his innocence that he had not done anything to warrant being arrested. Gottschalk told Anthony, "well you're not following instructions, and that's resisting."

35. Anthony told Gottschalk that he needed to speak to a particular lieutenant, Mike Roof (sp?) and that this lieutenant would tell Gottschalk to "back the fuck off."

36. This clearly angered Gottschalk, and it is clear from his body cam that he grabbed the shirt of Anthony and flipped him over, and then **smashed his head into a wall!**

37. It is only after this exchange that an officer asked Anthony "what are you doing over here anyway?"

38. He told OKC officers that he lived at the apartments.

39. The officer said that they'd had a report he was kicking in doors. At no point on video is Anthony kicking in a door, or even in contact with a door.

40. No officer attempted to speak with Rigsby before they arrested and beat Anthony.

41. No officer even appeared to look at any door in the complex for any sign of damage.

42. As a result of the blood gushing from Anthony's head, the decision was made to take him to hospital. He had to be medically cleared before he could be transported to the Oklahoma County Jail on baseless charges.

43. Anthony was examined by doctors and diagnosed with a severe concussion. It clearly stated in the medical records that a **concussion is a brain injury**.

44. The doctors gave clear discharge instructions to OKC stating that Plaintiff should be discharged home, and he should be woken every two hours to check for appropriate mentation.

45. Instead of taking Plaintiff home, where he could be cared for, OKC took Anthony to the Oklahoma County Jail where he was booked in on frivolous misdemeanor charges.

46. He was not checked on for hours on end.

47. In fact, when he eventually awoke, his cellmate exclaimed, **"oh thank God, I had to keep kicking you as you kept stopping breathing."**

48. Anthony was not woken every two hours per medical instructions. Instead, **he laid with a brain injury, bleeding from his face on a cold unclean floor of the jail.**

49. Two weeks after this horrific incident, **Anthony began vomiting and his speech was slurred**. Since this ordeal he has undergone surgery for torn-tendons in his shoulder, and he now wears a hearing aid and glasses due to the brain injury he suffered. He needed no aides before Gottschalk forced his wrists into cuffs and ploughed his head into a wall.

**FIRST CLAIM FOR RELIEF –**
**Violations of Fourth and Fourteenth Amendment under 42 U.S.C. § 1983 –**
**Excessive Force against OKC and Gottschalk**

50. Anthony adopts and realleges all material allegations in paragraphs 1 through 49 as if set forth below.

51. Every person in the State of Oklahoma has the right to be secure against unreasonable seizures of their person, and the Oklahoma Constitution, Art 2 § 30, prevents the state, its political subdivision and their respective employees from unlawful and unreasonable seizures.

52. Defendant Gottschalk, at all relevant times hereto, was acting in his capacity as a police officer, under color of statutes, ordinances, customs and usage of the City of Oklahoma City and Oklahoma City Police Department.

53. Defendant Gottschalk's conduct on August 2nd, 2019, was an intentional violation of Anthony's right to be secure in his person in violation of the Fourth Amendment of the Constitution of the United States of America, as incorporated to the states by virtue of the Fourteenth Amendment. Gottschalk used excessive and unreasonable force against Plaintiff by specifically twisting Anthony's arm and tearing tendons in his left shoulder and forcing his head into a concrete wall; thereby severely injuring Anthony. Gottschalk effected a meritless arrest after responding to a call regarding a potential home invasion. Upon arrival at the scene he conducted no investigation, and did not identify himself to Plaintiff. Then when Gottschalk lost his patience with Anthony he peppered sprayed him in the face, handcuffed him, and smashed his head in to a wall.

54. A reasonable law enforcement officer would know that excessive force under these circumstances is a violation of the constitutionally guaranteed rights and that citizen's rights are not to be subject to excessive force. Plaintiff was clearly secured and established at the time Defendant attacked Anthony. All of the above

complained of acts constitute an objectively unreasonable use of force. Judging the same from the perspective of a reasonable officer placed at the same, or substantially similar scene, in light of the facts and circumstances confronting him, the above Defendant acted in an objectively unreasonable manner.

55. The above complained of events deprived Anthony of his rights and privileges as guaranteed by the Fourth and Fourteenth Amendments to the Constitution of the United States of America, as protected by 42 U.S.C. § 1983.

56. The intentional actions of OKC and Gottschalk resulted in harms that were a foreseeable result of malicious, willful and intentional acts. These intentional actions were all in reckless disregard, and deliberately indifferent to Plaintiff's constitutional rights.

57. As a direct and proximate result of OKC's and Gottschalk's actions, Anthony suffered severe and extreme pain and suffering, in the past, in the present, and the expected future. This matter caused severe strain on his life due to the actions of OKC and Gottschalk.

**SECOND CLAIM FOR RELIEF –**
**Cruel and Unusual Punishment in Violation of the Fourteenth Amendments to the Constitution of the United States (42 U.S.C. § 1983) – Defendants OKC and Gottschalk.**

58. Anthony adopts and realleges all material allegations in paragraphs 1 through 57 as if set forth below.

59. Defendant Gottschalk knew when he lost his temper and hit Plaintiff's head into a wall that his actions were going to cause injuries.

60. OKC and Gottschalk knew there was a strong likelihood that Anthony's injuries could cause permanent damage. It was clear when Anthony's head was lifted off the concrete that he had a serious medical emergency, and that is why he was transported to hospital.

61. Per the doctor's advice, he should have been discharged home with instructions to a caregiver to wake him every two hours.

62. Instead, he was taken to the jail.

63. At a very minimum he should have been placed on the medical floor of the jail where he could at least be observed. Anthony was placed in general population of the jail, and was at the mercy of the other inmates in his cell to try and look after him.

64. Defendants failed to provide, *inter alia*: adequate medical treatment, or even follow the very simple instructions given by the doctors at the hospital who medically cleared Plaintiff for discharge.

65. There was a deliberate indifference to Anthony's serious medical needs and health and safety, and as such, his brain injury may have been aggravated as a result of the lack of treatment he received in the hours after he suffered the concussion. OKC and Gottschalk were well aware of the injuries that Anthony received as a result of their actions.

66. As a direct and proximate result of Defendants' conduct, Anthony suffered severe physical pain, severe emotional distress, severe mental anguish, and is now reliant

on a hearing aid and glasses, and all other compensatory damages alleged herein or otherwise recoverable.

67. There is an affirmative link between the aforementioned acts and/or omissions of these Defendants in being deliberately indifferent to Anthony's serious medical needs, health and safety and policies, practices and/or customs which both defendants respectively promulgated, created, implemented and/or were responsible for maintaining.

68. All Defendants knew and/or it was obvious that the maintenance of the aforementioned policies, practices and/or customs posed an excessive risk to the health and safety of arrestees like Anthony.

69. All Defendants disregarded the known and/or obvious risks to the health and safety of arrestees like Anthony.

70. All Defendants tacitly encouraged, ratified and/or approved of the acts and/or omissions alleged herein, knew (and/or it was obvious) that such conduct was unjustified and would result in violations of constitutional rights, and were deliberately indifferent to the serious medical needs of arrestees like Anthony.

71. There is an affirmative link between the deprivation of Anthony's right to be free from cruel and unusual punishment and policies, practices and/or customs all defendants promulgated, created, implemented and/or were responsible for maintaining.

**THIRD CLAIM FOR RELIEF –**
**42 U.S.C. §1983 Municipal Liability against OKC**

72. Anthony adopts and realleges all material allegations in paragraphs 1 through 71 as if set forth below.

73. Defendant Gottschalk was at all relevant times hereto, acting in his capacity as a police officer for the City of Oklahoma, under color of statutes, ordinances, customs, and usage, of the City of Oklahoma City.

74. The following, among others that will be developed in discovery, informal customs, or practices, are so persistent and widespread, that they are standard operating procedure for OKC police department:

   a. Officers using extreme physical force, without warning or commands being given, to obtain compliance with a suspect, or not allowing time for compliance once a command is given;

   b. Officers using false, misleading, or deceptive information when excessive force has been used to justify and cover their actions;

   c. Officers detaining suspects under false pretenses;

   d. Officers using painful compliance techniques, or outright force, against restrained suspects who pose no immediate, or potential threat to officers, others, or themselves;

   e. Tolerating officers who use unreasonable and excessive force against a suspect or subject;

f. Tolerating officers who provide false, misleading, or deceptive statements, or testimony, designed to inculpate and convict innocent defendants of crimes;

g. Officers failing to properly secure the scene or suspect;

h. The failure to promulgate, implement or enforce adequate medical treatment policies responsive to the serious medical needs of arrestees like Anthony;

i. Inadequate medical triage screening that fails to identify arrestees with serious medical needs;

j. The failure to adequately train employees with respect to the proper assessment, classification and treatment of arrestees with serious medical conditions.

75. There is an affirmative link between the aforementioned acts and omissions of Defendants and the informal customs, or practices, of OKC. The customs or practices are the direct cause in fact of Plaintiff's constitutional injury.

76. Further, OKC is responsible for the adequate training and supervision of officers, who have participated, conspired, and acted in concert in causing the above complained of constitutional deprivations suffered by Plaintiff and others. The training for preservation of constitutional protections, on excessive force, and proper medical assessment, classification, and care are designed to protect constitutional rights of citizens while in performance of police duties. OKC failed to adequately train, and/or supervise its officers relating to the use of force and on

the Fourth Amendment protections afforded to citizens under the Constitution of the United States of America.

77. This complained of failure to train in the proper use of force, securing a scene, proper medical assessment, classification, and care and basic Fourth and Fourteenth Amendment principles set in motion the events resulting in Anthony's deprivation of constitutional rights. The failure by OKC to provide adequate oversight, supervision, and discipline for offensive conduct is affirmatively linked to Anthony's constitutional injuries and damages.

78. OKC, the police department, and its final policy maker, the Police Chief, knew, or should have known, the obvious result of the maintenance of the aforementioned actions, inactions, and/or omissions would be substantially certain constitutional violations.

79. OKC owes a duty to the citizens of OKC, to ensure that its officers are properly trained and supervised in order that they do not abuse their power when dealing with members of the public, and that they are able to conduct reasonable stops without using excessive force. There was a blatant disregard of known and obvious risks to citizens such as Anthony by OKC.

80. Gottschalk acted in accordance with formal policies and/or informal customs of the Oklahoma City Police Department. As a result of the failure to be properly trained and supervised, or their improper retention, Anthony's damages were proximately caused therein.

81. As a direct and proximate result of OKC's actions, Plaintiff suffered extreme pain and suffering, in the past, in the present, and is expected to continue the same in the future. This matter has caused a strain on Anthony's life.

**FOURTH CLAIM FO RELIEF –**
**Negligence**

82. Anthony adopts and re-alleges all material allegations in paragraphs 1through 81 as if set forth below.

83. Signal 88 owed a duty to ensure that their security guards are adequately trained for their position and know how to appropriately respond to a situation. Anthony made no gestures towards kicking in his front door, but simply stated that he could as it was his front door. Rigsby, then, without real cause called the police, instead of failing to establish whether Anthony was the true resident of the apartment.

84. Rigsby's negligence and lack of training set into motion all the events that led to Anthony's injuries and deprivation of constitutional rights.

85. Rigsby acted with negligence and reckless disregard as to the outcome of the situation in calling the police, and acted with dereliction of his duties.

86. Defendants OKC and Gottschalk owed Anthony a duty to ensure he was aware of who was approaching him at the time, and make it clear that the commands being given were by officers acting under color of law. They also owed him a duty of time to respond to their commands once they had identified themselves so that he could respond. Instead, they negligently pepper sprayed him in the face rendering him in severe pain and blinded.

87. At no time did an officer on the scene attempt to render aid to Anthony by getting him water to rinse his eyes.

88. Gottschalk was negligent in his duties when trying to establish who the suspect was that he had been called to respond to, and whether Anthony had prior to his arrival, acted in anyway with criminal intent or behavior.

89. Anthony's subsequent injuries were due to Defendant OKC's and Gottschalk's negligence in recklessly handcuffing him too tightly and allowing his head to hit a concrete wall, and then failing to render the appropriate medical aid as prescribed by doctors. Each of the Defendants' negligence led to the incident that caused bodily harm and injury to the Anthony.

90. Each Defendant breached its duties owed to Anthony, as well as the public at large.

91. As a direct and proximate cause of Defendants' negligence, Plaintiff suffered extreme pain and suffering, in the past, on the present, and is expected to continue in the future. This matter has caused a strain on Anthony's life.

92. Defendants are liable for the acts of its employees, servants and agents, such as Defendants Gottschalk and Rigsby, by virtue of respondeat superior.

**FIFTH CLAIM FOR RELIEF –**
**Assault**

93. Anthony adopts and re-alleges all material allegations in paragraphs 1 through 92 as if set forth below.

94. Plaintiff was minding his own business trying to arrange for his partner to come home with the keys so that he could re-enter his apartment when he was attacked by Defendants OKC and Gottschalk.

95. Plaintiff was placed in apprehension of immediate harmful contact by OKC's and Gottschalk's conduct.

96. As a direct and proximate cause of Defendants OKC's and Gottschalk's actions, Plaintiff suffered extreme pain and suffering, in the past, on the present, and is expected to continue in the future. This matter has caused a strain on Anthony's life.

**SIXTH CLAIM FOR RELIEF –**
**Battery**

97. Anthony adopts and re-alleges all material allegations in paragraphs 1 through 96 as if set forth below.

98. Defendants OKC and Gottschalk without Plaintiff's consent, acted with the intent of making a harmful contact with Plaintiff and with the intent of putting Plaintiff in imminent apprehension of harmful and offensive conduct.

99. Defendants OKC and Gottschalk maliciously and intentionally struck Plaintiff without cause or justification.

100. Plaintiff suffered serious physical injury, mental anguish, emotional stress, and trauma as a result of Defendants' conduct.

101. As a direct and proximate cause of Defendants OKC's and Gottschalk's actions, Plaintiff suffered extreme pain and suffering, in the past, on the present, and is expected to continue in the future. This matter has caused a strain on Anthony's life.

**SEVENTH CLAIM FOR RELIEF –**
**Wrongful Arrest**

102. Anthony adopts and re-alleges all material allegations in paragraphs 1 through 101as if set forth below.

103. Defendants OKC and Gottschalk breached the clearly established statutory and constitutional rights of which a reasonable person in the same or similar position would have known by arresting Anthony.

104. OKC and Gottschalk approached Anthony without any indication of who they were and commanded him to take his hand out of his pocket. Then, after they pepper sprayed him in the face, they put him in handcuffs and arrested him for resisting an officer. Plaintiff was not given an opportunity to comply, and there was no reasonable suspicion to stop Anthony who was simply talking on his phone. Upon the officers' arrival there was no criminal activity afoot, nor any indicia that any had been. Plaintiff was also arrested for public intoxication when he was standing on private property in a gated community.

105. The conduct of Defendants OKC and Gottschalk constitutes the wrongful arrest of Anthony.

106. As a direct and proximate cause of Defendants OKC's and Gottschalk's actions, Plaintiff suffered extreme pain and suffering, in the past, on the present, and is expected to continue in the future. This matter has caused a strain on Anthony's life.

107. Defendant OKC is liable for the acts of its employees, servants and agents, such as Defendants Gottschalk, by virtue of respondeat superior.

**EIGHTH CLAIM FOR RELIEF –**
**Intentional Infliction of Emotional Distress**

108. Anthony adopts and re-alleges all material allegations in paragraphs 1 through 107 as if set forth below.

109. The conduct of Defendants was so extreme and outrageous as to go beyond all possible bounds of decency and would be considered atrocious and utterly intolerable in a civilized society.

110. Defendants recklessly caused severe emotional distress to Anthony beyond which a reasonable person could be expected to endure.

111. As a direct and proximate cause of Defendants OKC's and Gottschalk's actions, Plaintiff suffered extreme pain and suffering, in the past, on the present, and is expected to continue in the future. This matter has caused a strain on Anthony's life.

**PUNITIVE DAMAGES**

112. Anthony adopts and re-alleges all material allegations in paragraphs 1 through 111 as if set forth below.

113. The conduct of Defendants was intentional, wanton, willful, in reckless disregard of the rights of others, and with malice toward others that Defendants should suffer punitive damages in order to protect the general public from continuous conduct of the same nature.

WHEREFORE, Plaintiff, Richard Allen Anthony, prays for judgment against Defendants for actual and compensatory damages in excess of $75,000, together with any

appropriate equitable relief, prejudgment interest, reasonable attorney's fees, punitive damages, and any such further relief to which the Court deems just and equitable.

Respectfully submitted,

**LAURA NEAL, OBA# 31874**
Warhawk Legal
127 NW 10th Street
Oklahoma City, OK 73103
(405) 397-1717 (Tel)
(405) 241-5222 (Fax)
laura@warhawklegal.com
**ATTORNEY FOR PLAINTIFF RICHARD ANTHONY**

**JURY TRIAL DEMANDED**
**ATTORNEY LIEN CLAIMED**